UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

RASHAAD HOGAN, )
    PLAINTIFF, )
V. ) NO. 2:22-cv-00472-JMS-MJD
OFC. E. TUMEY, )
OFC. NORTON, )
OFC. MALLOTT, )
OFC. MURRAY, )
Sgt. YARBER, )
Sgt. VAUGHN, )
Sgt. KOZATEK, )
    DEFENDANTS. )

FILED
10/25/2022
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

## VERIFIED CIVIL RIGHTS COMPLAINT

### 1. PRELIMINARY STATEMENT

1. This is a 42 U.S.C. §1983 Civil Rights Complaint filed by the Plaintiff Rashaad Hogan, Pro-Se, a state prisoner, for compensatory and punitive damages against the defendants. This complaint alleges Eighth Amendment cruel and unusual punishment and deliberate indifference claims, as well as First Amendment free exercise claims. Plaintiff demands a trial by jury.

1.

## II. JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and § 1343, in that this complaint seeks to redress, under color of state law, violations of federally protected rights and immunities of the plaintiff.

## III. PARTIES

3. The Plaintiff, Rashaad Hogan, is and was at all times an incarcerated individual confined by the Indiana Department of Corrections ("IDOC") confined in the Wabash Valley Correctional Facility ("WVCF") in the Secured Confinement Unit ("SCU").

4. Defendant Ofc. F. Fumay ("Fumay") is and was at all times mentioned in this complaint a correction officer employed by IDOC who worked at WVCF in the SCU.

5. Defendant Ofc. Mallott ("Mallott") is and was at all times mentioned in this complaint a correction officer employed by IDOC who worked at WVCF in the SCU.

6. Defendant Ofc. Norton ("Norton") is and was at all times mentioned in this complaint a correction officer employed by IDOC who worked at WVCF in the SCU.

7. Defendant Sgt. Yarber ("Yarber") is and was at all times

2.

mentioned in this complaint a correctional sergeant employed by IDOC who worked at WVCF in the SCU.

8. Defendant Sgt. VAUGHN ("VAUGHN") is and was at all times mentioned in this complaint a correctional sergeant employed by IDOC who worked at WVCF in the SCU.

9. Defendant Sgt. KOZATEK ("KOTAZEK") is and was at all times mentioned in this complaint a correctional sergeant employed by IDOC who worked at WVCF in the SCU.

## IV. EXHAUSTION OF AVAILABLE REMEDIES

10. Mr. Hogan affirms that he exhausted his available administrative remedies by filing prison grievances and appealing unfavorable decisions to the final authority before bringing this suit.

## V. FACTS

11. Mr. Hogan is housed in the SCU at WVCF where he spends 23 and sometimes 24 hours a day inside a cell that is roughly 10' x 7'. Inside the cell is a sink and toilet, two desk shelves and a concrete bunk that reduces the amount of space Mr. Hogan can utilize.

12. As a Muslim, it is incumbent that Mr. Hogan occupies

3.

and maintains a clean cell, free of impurities, as Muslims are only permitted to pray in clean settings. Islamic prayers are obligatory five times a day.

13. On the date of August 23, 2022, Mr. Hogan's toilet in his cell became inoperable and would not flush around 6:00 am. Around 7:00 am, Tumey came on the A700 range of the SCU to pass out breakfast trays.

14. Mr. Hogan informed Tumey that his toilet was inoperable, overflowing with urine and feces, and that he needed maintenance and to be taken to a holding cell to use the bathroom. Tumey said he "would see what he could do about it" and continued passing out trays.

15. Shortly after, Tumey came by to collect breakfast trays and Mr. Hogan asked about maintenance again to which Tumey responded, "I've been dealing with trays. I'll deal with it when I get a chance." He then left the range.

16. Tumey and Mallott came back on the A700 range to ask about recreation and Mr. Hogan again asked about maintenance fixing his toilet and being escorted to the holding cell to use the restroom. They stated that Mr. Hogan would have to hold it because

4.

they were focused only on getting recreation done, and that he would have to wait for maintenance to be called until they felt like calling.

17. After recreation, Fumey passed out lunch trays on the A700 Range. Mr. Hogan complained again about the feces and urine in his toilet, the unfathomable stench in his cell and becoming nauseous and lightheaded. Fumey stated "Since you keep complaining, then I'm not going to feed you. So either stop bitching and wait until I feel like calling maintenance, or don't eat."

18. At this point Mr. Hogan began yelling for a sergeant to come address the issue. At approximately 11:02 am, Sgt. Yarber came on the range and spoke with Mr. Hogan. Yarber observed Mr. Hogan's toilet was overflowing with human waste and said that he could smell the stench outside of the cell. Yarber said he would get maintenance immediately and personally come back to escort Mr. Hogan to the holding cell restroom.

19. Yarber never came back to the A700 range and maintenance was never called to fix Mr. Hogan's toilet.

20. Several times, Fumey and Mallott came back and forth

5.

through the A700 Range and would continuously disregard Mr. Hogan's Request about maintenance and being taken to the Holding Cell to use the Bathroom. Mr. Hogan's Requests were met with disrespectful, vulgar remarks and flat-out denials from Tumey and Mallott.

21. This persisted throughout the Day and after 1:00pm, Mr. Hogan notified Tumey and Mallott that he needed his toilet flushed so that he could clean his cell and make his Islamic Prayers since he couldn't Pray with feces and urine sitting in his cell.

22. They Refused Mr. Hogan's Request stating that he just wouldn't be praying today and to ask for Forgiveness Later. Tumey also said that he was sick of Mr. Hogan hassling about a toilet and it was Hogan's fault for using the Bathroom in a Broken toilet to begin with.

23. The nature of these comments and Remarks Demonstrated Both a Deliberate Indifference to Mr. Hogan's Right to Freely Exercise his Religion and to Be Free from Cruel and Unusual Punishment. These Officers made no attempt to Remedy Mr. Hogan's complaints nor take Mr. Hogan to a Holding Cell to use the Bathroom.

6.

24. Mr. Hogan suffered intense abdominal pains from holding in his bladder and bowels for 12 hours. Mr. Hogan was also deprived of the basic human need to use the restroom. Having to remain in a cell smelling the unbearable stench deprived Mr. Hogan of the minimal civilized measures of lifes necessities which far exceeds any reasonable and legitimate punishment of his crimes convicted.

25. Tumey, Mallott and Yarber left the facility at 6:00 pm shift change without having attempted to fix Mr. Hogan's toilet or take him to a holding cell to use the restroom.

26. Mr. Hogan didn't get to use the restroom until 7:35 pm when staff on nightshift escorted him to the holding cell. Mr. Hogan's toilet was inoperable until 8:45 pm after nightshift contacted maintenance to fix the toilet.

27. Between 7:00 am and 8:45 pm, Mr. Hogan missed 3 of his obligatory Islamic prayers due to the actions and inactions of Tumey, Mallott and Yarber.

28. On August 29, 2022, a flood occurred on the A700 range of the SCU at which time Defendant Murray came and shut off all the water on the range.

7.

29. At approximately 4:45 PM, Murray came back on the A700 range to cut the water on so that inmates could get water, flush toilets and wash their hands before dinner.

30. Mr. Hogan informed Murray that his toilet wasn't working and that he had urine and feces in his toilet. Murray stated that Mr. Hogan was "shit out of luck" and that he cut the water on and didn't know what else Mr. Hogan wanted him to do.

31. Mr. Hogan asked Murray to call for maintenance or get his toilet fixed inside the pipe chase but Murray said that he wasn't going to do neither because the range should have never got flooded. Murray proceeded to cut the other inmates water off and left the range.

32. Mr. Hogan asked Murray again to see about getting his toilet flushed but Murray said after he was finished picking up dinner trays, he wasn't doing anything else and to wait for night shift.

33. WVCF has a policy that states when an inmate complains about a plumbing issue, correctional officers are to notify the appropriate authorities so that

8.

Maintenance could be called or a work order issued. Murray made no attempt to do either, demonstrating his culpable state of mind and deliberate indifference.

34. Murray left the facility at 6:00pm shiftchange without notifying any other correctional officers or sergeants of Mr. Hogan's complaints.

35. Around 6:30pm, Mr. Hogan informed Defendant Norton that his toilet was inoperable, he had to use the restroom, and that he needed to have his toilet flushed so he could make his Islamic prayers. Norton advised that there was nothing she could do until she spoke with a sergeant.

36. At 7:00pm Sgt. Vaughn and Kozatek came on the range to address the issue about the water and Mr. Hogan's toilet. They determined that maintenance would need to be called to fix the toilet and stated that they would get it done after legal mail was passed out.

37. Mr. Hogan then requested to be escorted to a holding cell to use the restroom and was told by the sergeants that they would get him out shortly.

38. Hours passed and no one came to take Mr. Hogan

9.

to the restroom or fix his toilet. Mr. Hogan was holding his bowels and bladder which gave him extreme pains and cramps in his abdomen.

39. Norton and unknown officers walked the range and ignored Mr. Hogans requests to go to the holding cell and use the bathroom since his toilet was overflowing with urine and feces. They all stated that it wasn't their job to call maintenance.

40. Mr. Hogan began yelling for a sergeant to take him to the holding cell to use the bathroom to no avail. His complaints fell on deaf and indifferent ears.

41. Mr. Hogan was forced to defecate in a styrofoam tray and urinate in his sink because the pain of holding it in was unbearable. This occurred around midnight.

42. Mr. Hogan requested that officers who did night walks, including Norton, to remove the tray full of feces from his cell because it was making him feel sick smelling it. Officers refused and dismissed his complaints as a joke.

10.

43. During the middle of the night, Mr. Hogan puked from the unbearable stench and other inmates on the range complained about the smell.

44. Mr. Hogan missed his 3 obligatory Islamic prayers and was unable to freely exercise his religious practices due to the actions of the Defendants in refusing to get his toilet fixed, despite making numerous requests.

45. Mr. Hogan was not pulled out of his cell to use the restroom until after 8:00 AM on August 30, 2022.

46. Ofc. Edwards had to go in Mr. Hogan's cell to remove the styrofoam tray full of feces with a trashbag while Mr. Hogan was in a holding cell. Maintenance finally was called and fixed Mr. Hogan's toilet after 9:30 AM. Maintenance stated that no one called them last night about a toilet issue in the SCU.

47. The fact that Mr. Hogan had to defecate in a styrofoam tray is beyond mere inconvenience and is an animalistic treatment no human being should have to endure.

48. The Defendants acted maliciously, intentionally, sadistically, and indifferently when they left Mr. Hogan in a cell

11.

with an inoperable toilet, on multiple occasions, smelling the strong stench of human waste and unable to properly relieve himself.

49. Mr. Hogan's grievances were treated indifferently by Lt. Holcomb and Warden Vanihel in that they aimed to shield officers from responsibility.

50. Mr. Hogan has no other adequate, plain or clear remedy at law to redress these grievances besides this suit for damages.

## VI. CLAIMS FOR RELIEF

51. The Defendants collectively, in refusing to escort Mr. Hogan to a holding cell with an operable toilet when the toilet in his cell didn't work, subjected Mr. Hogan to cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution.

52. The Defendants collectively, in refusing to acknowledge Mr. Hogan's request for maintenance and denying/disregarding his request to be escorted to a holding cell with an operable toilet, demonstrated deliberate indifference to his health and safety in violation of the Eighth Amendment of the U.S. Constitution.

53. The Defendants collectively, in refusing to contact maintenance to fix Mr. Hogan's toilet when he informed them that he couldn't pray in such unsanitary conditions, demonstrated deliberate indifference and violated his ability to freely exercise his religion, in violation of the First Amendment of the U.S. Constitution.

## VII. Relief Requested

WHEREFORE Mr. Hogan requests that this Court enter judgement for the plaintiff as follows:

A.) Grant Mr. Hogan compensatory damages as follows:
   1. $50,000 each, against all Defendants.

B.) Grant Mr. Hogan punitive damages as follows:
   1. $100,000 each, against all Defendants.

C.) Grant Mr. Hogan the cost of this action and all fees accumulated in bringing this suit.

D.) Grant Mr. Hogan such other relief as it may appear he is entitled.

## AFFIRMATION OF PLAINTIFF

I AFFIRM UNDER THE PENALTY OF PERJURY, PURSUANT TO 28 U.S.C. §1746, THAT I HAVE READ ALL OF THE STATEMENTS CONTAINED HEREIN AND THAT I BELIEVE THEM TO BE TRUE AND ACCURATE TO THE BEST OF MY PERSONAL KNOWLEDGE AND BELIEF.

Signed: October 24, 2022

X _____, PLAINTIFF/PRO-SE
RASHAAD HOGAN #166825
WABASH VALLEY CORR. FACILITY
PO BOX 1111
CARLISLE, IN 47838

14.